UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JAVIER GARCIA,<br><br>Defendant.<br><br>UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JAVIER GARCIA,<br><br>Defendant. | Case No. 10-cr-00301-BLF-4<br><br><br><br><br>Case No. 15-cr-00288-BLF-1<br><br><br>**ORDER DETERMINING THAT EXCLUSIONARY RULE DOES NOT APPLY; AND DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE** |

The Ninth Circuit has remanded the above-captioned cases following Defendant Javier Garcia's successful appeal of this Court's denial of his motion to suppress evidence. This Court found that police officers' initial warrantless entry into Garcia's residence was lawful under the emergency aid and protective sweep exceptions to the warrant requirement, and thus that the officers' subsequent entry and search of the residence pursuant to a search condition of Garcia's supervised release was proper. The Ninth Circuit disagreed, concluding that neither exception to

the warrant requirement applied and that the initial warrantless entry of Garcia's residence violated his Fourth Amendment rights. In reversing the suppression ruling, however, the Ninth Circuit noted that "[t]he district court found that no Fourth Amendment violation occurred, and as such, did not consider whether the exclusionary rule applied to the seized evidence or to Defendant's post-arrest statements." *United States v. Garcia*, No. 17-10071, 2018 WL 4360990, at *3 (9th Cir. Sept. 13, 2018). The Ninth Circuit remanded so that this Court could consider application of the exclusionary rule in the first instance.

Following issuance of the mandate, this Court obtained briefing and conducted a hearing on February 6, 2019. For the reasons discussed below, the Court concludes that the exclusionary rule does not apply. Accordingly, the Court once again DENIES Garcia's motion to suppress evidence.

**I.  BACKGROUND**

**A.  Search and Arrest**

The circumstances giving rise to the search of Garcia's residence and his subsequent arrest are described in this Court's prior Order Denying Motion to Suppress ("Prior Order"), issued April 15, 2016. *See* ECF 380 in Case No. 10-cr-00301, ECF 32 in Case No. 15-cr-00288. The Prior Order was issued after a lengthy evidentiary hearing, and it reflects credibility determinations and other factual findings which were not disturbed by the Ninth Circuit.

The relevant facts as previously found by this Court are as follows: on January 18, 2015, Officers Richard Lopez and Raul Rosales were patrolling the neighborhood in which Garcia resided. Prior Order at 1-2. The neighborhood is known for its high incidence of gang-related activity, including drug trafficking, weapons violations, violence against persons, and burglaries. *Id.* at 2. The purpose of the officers' assignment was to enhance public safety in that neighborhood. *Id.* When the events in question began, Officer Lopez was patrolling on his bicycle while Officer Rosales was in a patrol car. *Id.*

Officer Lopez stopped to make a cell phone call in front of 513 Fremont Street, a complex comprised of multiple residential units. Prior Order at 2. While he was standing there, he heard Officer Rosales on the radio saying that he had tried to contact two individuals and one had run

2

away holding his waistband. *Id.* Officer Rosales stated that he was pursuing on foot and that the individual was headed toward Officer Lopez. *Id.* The individual who later was identified as Alfonso Nevarez ran past Officer Lopez a few seconds later. *Id.* Officer Lopez did not see a weapon on Nevarez. *Id.* at 2-3. Officer Lopez dropped his bicycle, drew his gun, and gave chase. *Id.* at 3. Nevarez ignored commands to stop and ran through a metal screen door at the front of Unit 10 of 513 Fremont Street. *Id.*

Officer Lopez stopped 15 to 20 feet from the entry of Unit 10. Prior Order at 3. Officer Rosales arrived a minute later, and the two officers agreed that Officer Lopez would watch the front door while Officer Rosales went to the back of the unit. *Id.* Officer Lopez saw a small boy come from the direction of Unit 10. *Id.* Officer Lopez questioned the boy, who stated that he lived in the unit and that "Poncho" was the man who had run into the unit. *Id.* Officer Lopez directed the boy to get out of the way and a woman standing nearby called the boy over to her. *Id.* An older woman then exited from Unit 10, shaking and appearing scared. *Id.* Officer Lopez testified that he may have asked her whether anyone else was inside the unit and that he definitely told her to move away from the door and out of potential line of fire. *Id.*

Approximately five minutes after the two officers separated, Officer Rosales informed Officer Lopez by radio that Nevarez was in custody. Prior Order at 3. Nevarez had exited Unit 10 through a small bathroom window at the back of the unit. *Id.* Officer Lopez stayed in front of Unit 10 with his gun drawn, directing bystanders to stay away. *Id.* Within minutes, Sergeants Cornelison and Ross arrived. *Id.* at 3-4. The three discussed whether to enter Unit 10 without a warrant and decided to enter to sweep for other people. *Id.* at 4. Officer Lopez testified that although he indicated on his police report that the sweep was to check for injured persons, he also believed a sweep was necessary for officer safety. *Id.*

The two sergeants and Officer Lopez entered Unit 10 and encountered Garcia, who was coming out of a bathroom. Prior Order at 4. Garcia stated that he had been asleep, and the officers observed creases on his face consistent with that statement. *Id.* The officers ordered Garcia to put his hands up, which he did. *Id.* The officers handcuffed Garcia for officer safety and took him outside the unit. *Id.* at 4, 19. Another officer stayed outside with Garcia while the

3

two sergeants and Officer Lopez quickly completed their sweep and exited the unit. *Id.* at 4. The officers were inside for less than a minute and conducted only a visual search for other persons. *Id*. at 16. They did not look in drawers or under furniture. *Id*.

The officers asked Garcia for his identity and conducted a records check which revealed that he was on federal supervised release with a search condition. Prior Order at 4, 19. Pursuant to the search condition, the officers searched Garcia and also re-entered Unit 10 to conduct a full search of the residence. *Id.* at 4, 19. During the search of the unit, Officer Lopez found a wallet, keys, and bags of what appeared to be methamphetamine all grouped together under a sleeping pad on the floor of the living room. *Id.* at 4, 19. Inside the wallet, Officer Lopez discovered identification belonging to Garcia and two bindles of what appeared to be methamphetamine. *Id.* at 4. At that point, Garcia was placed under arrest. *Id.* at 4, 19.

Garcia was transported to the police station and informed of his *Miranda* rights. Prior Order at 5-6. Garcia interrupted the reading of his rights multiple times, stating that he did not understand his rights and also claiming that the bindles were not his. *Id.* at 6. The interview proceeded, and in response to Officer Lopez's questioning Garcia identified the other members of his household as his nephew, the young boy, the boy's mother (Defendant's niece), and his nephew's mother (Defendant's sister). *Id.* Garcia also admitted ownership of the bindles found in his wallet, stating that they were for personal use, but denied ownership of the bindles found outside his wallet. *Id.* at 7.

**B.     Suppression Motion and Stipulated Facts Bench Trial**

At the time of Garcia's January 2015 arrest, a Probation Form 12 was pending in Case No. 10-cr-00301, charging him with six supervised release violations (Charges 1-6). *See* ECF 319 in Case No. 10-cr-00301. The Form 12 was amended to add two additional supervised release violations arising from the methamphetamine found in Garcia's residence (Charges 7 and 8). *See* ECF 366 in Case No. 10-cr- 00301.

On May 28, 2015, a single-count indictment issued in Case No. 15-cr-00288, charging Garcia with possession of methamphetamine with intent to distribute. Indictment, ECF 1 in Case No. 15-cr-00288.

4

Garcia moved to suppress the evidence recovered from his residence and post-arrest statements he made to police. The motion was filed in both Case No. 10-cr-00301 with respect to the supervised release revocation proceedings, and in Case No. 15-cr-00288 with respect to the prosecution for possession of methamphetamine with intent to distribute. *See* Motion to Suppress, ECF 372 in Case No. 10-cr-00301, ECF 25 in Case No. 15-cr-00288. As discussed above, the Court denied the suppression motion in its Prior Order issued April 15, 2016. *See* Prior Order, ECF 380 in Case No. 10-cr-00301, ECF 32 in Case No. 15-cr-00288. The denial was based on the Court's conclusions that the initial warrantless entry into Garcia's residence was lawful under the emergency aid and protective sweep exceptions to the warrant requirement, and thus that the subsequent entry and search of the residence pursuant to a supervised release search condition was proper. *See id.*

Following the Court's denial of Garcia's motion to suppress, the parties agreed to proceed on a stipulated facts bench trial in both cases. *See* Joint Stipulations and Waivers, ECF 391 in Case No. 10-cr-00301, ECF 46 in Case No. 15-cr-00288. The parties stipulated to a number of facts that they agreed the Government would have established based on evidence challenged in the suppression motion, with the express understanding that in so stipulating Garcia had not waived his right to appeal the suppression ruling. *See id.* The stipulated facts included the following: police conducted a search of Garcia's residence on January 18, 2015; the police found Garcia's wallet, which contained two bindles of what appeared to be methamphetamine, and three other bindles of what appeared to be methamphetamine, under the sleeping pad where Garcia habitually slept; the police arrested Garcia for possession of a controlled substance; Garcia admitted that the two bindles in the wallet were his; lab testing confirmed that the five bindles contained methamphetamine; the total amount of methamphetamine in the five bindles, approximately 10 grams, was in excess of what a methamphetamine user would be expected to have on hand for personal use; and the manner in which the methamphetamine was packaged into individual bindles supported an inference beyond a reasonable doubt that the methamphetamine was intended for distribution. *See id.*

The Court held the stipulated facts bench trial on October 25, 2016. With respect to Case

No. 10-cr-00301, the Government withdrew Charge 1; Garcia admitted Charges 2-6, which were unrelated to the methamphetamine; and the Court found Garcia guilty of Charges 7-8, which were based on the methamphetamine found in his residence. Criminal Minutes, ECF 393-1, 404 in Case No. 10-cr-00301. The Court revoked Garcia's supervised release and sentenced him to 24 months imprisonment (time served) and 12 months of supervised release. Criminal Minutes, ECF 404 in Case No. 10-cr-00301.

With respect to Case No. 15-cr-00288, the Court found Garcia guilty on the single count (Count 1) of the Superseding Indictment, charging possession of methamphetamine with intent to distribute. Criminal Minutes, ECF 48 in Case No. 15-cr-00288. The Court sentenced Garcia to 30 months imprisonment and 3 years of supervised release. Criminal Minutes, ECF 52 in Case No. 15-cr-00288.

The Court entered judgment in both cases on February 13, 2017. Judgment on SRV, ECF 405 in Case No. 10-cr-00301, Judgment, ECF 55 in Case No. 15-cr-00288.

### C. Ninth Circuit's Reversal of Suppression Ruling and Remand to this Court

Garcia appealed the suppression ruling in both cases. The appeals were consolidated and addressed in a single memorandum decision issued September 13, 2018. The Ninth Circuit found that this Court erred in applying the emergency aid exception to the warrant requirement, because the officers "lacked an objectively reasonable basis to believe that there was someone inside of the residence in need of immediate assistance." *Garcia*, 2018 WL 4360990, at *2. The Ninth Circuit also found that this Court erred in applying the protective sweep exception to the warrant requirement, because there were "no facts supporting a reasonable belief that there were individuals inside the house who threatened the officers' safety." *Id.* at *3. Absent application of either exception, the initial warrantless entry violated Garcia's Fourth Amendment rights. *Id.* at *3. The Ninth Circuit reversed this Court's denial of Garcia's suppression motion on that basis, but found remand "appropriate to allow the district court to consider whether the exclusionary rule applies in this case in the first instance." *Id.*

This Court considers whether the exclusionary rule applies in each case, starting with Case No. 10-cr-00301 and then turning to Case No. 15-cr-00288.

## II. CASE NO. 10-cr-00301: SUPERVISED RELEASE REVOCATION PROCEEDINGS

The Court's consideration of the exclusionary rule is straightforward with respect to the supervised release revocation proceedings in Case No. 10-cr-00301. The Ninth Circuit has held expressly that "the exclusionary rule does not apply to supervised release revocation hearings." *United States v. Hebert*, 201 F.3d 1103, 1104 (9th Cir. 2000).

In *Hebert*, the Government instituted supervised release revocation proceedings against the defendant, Hebert, based on his alleged possession of methamphetamine found during a warrantless search of his apartment. *Hebert*, 201 F.3d at 1104. Hebert moved to suppress the methamphetamine as the fruit of an unconstitutional search. *Id.* The district court found that the officers had reasonable suspicion that Hebert was involved in criminal activity, denied the motion to suppress, revoked Hebert's supervised release, and sentenced him to two years incarceration. *Id.* On appeal, Hebert challenged the district court's determination that the officers conducting the search had reasonable suspicion that he was involved in criminal activity. *Id.* The Ninth Circuit declined to address the merits of Hebert's argument, concluding that the exclusionary rule simply does not apply to supervised release revocation proceedings. *Id.*

At the hearing, Garcia's counsel conceded that *Hebert* governs with respect to Case No. 10-cr-00301. Accordingly, Garcia's motion to suppress is DENIED with respect to Case No. 10-cr-00301.

## III. CASE NO. 15-cr-00288: POSSESSION WITH INTENT TO DISTRIBUTE

The Court's consideration of the exclusionary rule is more complicated with respect to the prosecution for possession of methamphetamine with intent to distribute in Case No. 15-cr-00288. The Court first discusses the rule generally, and then it addresses two exceptions to the rule that potentially apply here – the good faith exception and the attenuation doctrine.

### A. Exclusionary Rule

"The Fourth Amendment protects the right to be free from 'unreasonable searches and seizures,' but it is silent about how this right is to be enforced." *Davis v. United States*, 564 U.S. 229, 231 (2011). The Supreme Court has filled in that gap by creating the exclusionary rule, "a deterrent sanction that bars the prosecution from introducing evidence obtained by way of a Fourth

Amendment violation." *Id.* at 231-32. "Exclusion is not a personal constitutional right, nor is it designed to redress the injury occasioned by an unconstitutional search." *Id.* at 236 (internal quotation marks and citations omitted). The rule's only purpose "is to deter future Fourth Amendment violations." *Id.* at 236-37.

"[T]he exclusionary rule encompasses both the primary evidence obtained as a direct result of an illegal search or seizure," and "evidence later discovered and found to be derivative of an illegality, the so-called fruit of the poisonous tree." *Utah v. Strieff*, 136 S. Ct. 2056, 2061 (2016) (internal quotation marks and citation omitted). The rule "almost always requires courts to ignore reliable, trustworthy evidence bearing on guilt or innocence." *Davis*, 564 U.S. at 237. "And its bottom-line effect, in many cases, is to suppress the truth and set the criminal loose in the community without punishment." *Id.* Thus, "society must swallow this bitter pill when necessary, but only as a 'last resort.'" *Id.*

The Supreme Court has recognized several exceptions to the exclusionary rule, including two asserted by the Government here, the good faith exception and the attenuation doctrine. *See Strieff*, 136 S. Ct. at 2016 (attenuation doctrine); *Davis*, 564 U.S. at 238 (good faith exception). Those are discussed in turn, below.

**B.     Good Faith Exception**

The Supreme Court has held that "when the police act with an objectively reasonable good-faith belief that their conduct is lawful, or when their conduct involves only simple, isolated negligence, the deterrence rationale loses much of its force, and exclusion cannot pay its way." *Davis*, 564 U.S. at 238 (internal quotation marks and citations omitted). "The Court has over time applied this 'good-faith' exception across a range of cases." *Davis*, 564 U.S. at 232 (exception applied when police conducted a search in compliance with then-binding precedent that later was overruled); *see also Herring v. United States*, 555 U.S. 135, 136-37 (2009) (exception applied when police officer reasonably but mistakenly believed that there was an outstanding arrest warrant due to another's bookkeeping error); *Illinois v. Krull*, 480 U.S. 340, 342 (1987) (exception applied when officers relied on a statute that subsequently was invalidated); *United States v. Leon*, 468 U.S. 897, 900 (1984) (exception applied when officers relied on facially valid search warrant

8

later found to be unsupported by probable cause).

The Government urges the Court to apply the good faith exception here, arguing that "the officers in this case were operating in good faith when they entered Defendant's apartment for public safety reasons." Gov't's Brief at 7, ECF 463 in Case No. 10-cr-00301, ECF 103 in Case No. 15-cr-00288. Garcia argues that the officers' conduct "cannot reasonably be characterized as good faith. Rather, it is deliberate, reckless, or grossly negligent." Def.'s Brief at 8, ECF 466 in Case No. 10-cr-00301, ECF 106 in Case No. 15-cr-00288. Garcia asserts that a reasonable police officer would have known that the conduct in question violated Garcia's constitutional rights. Finally, Garcia contends that the cases applying the good faith exception are factually distinguishable from the present case.

In evaluating these arguments, the Court relies on the Ninth Circuit's determinations set forth in its memorandum decision as well as this Court's own factual findings set forth in its Prior Order and left undisturbed by the Ninth Circuit. The Court notes that some of Garcia's arguments are based on a version of events which conflicts with this Court's prior factual findings. For example, Garcia asserts that he was arrested inside his residence while this Court found that he was arrested outside his residence. *Compare* Def.'s Brief at 3 (asserting that arrest was inside the residence) *with* Prior Order at 19 (finding that arrest was outside the residence). The Ninth Circuit expressly declined to consider Garcia's factual contention that he was arrested inside his residence. *See Garcia*, 2018 WL 4360990, at *3. To the extent that Garcia is attempting to relitigate this Court's prior factual findings, Garcia's arguments are outside the scope of the remand. At the hearing on remand, the Court stated its view that Garcia received a full evidentiary hearing on his suppression motion and that neither party had asked for a further evidentiary hearing. Counsel for both sides agreed.

This Court nonetheless agrees with Garcia that the good faith exception cannot be applied here. The Court credited Officer Lopez's testimony regarding the officers' conduct and motivations, and it sees no reason to disturb that credibility finding. *See* Prior Order at 1. However, the officers' subjective belief in the legality of their conduct is immaterial, as the good faith exception is governed by an objective standard. The Ninth Circuit determined that "the

9

police had *no reason* to believe that anybody remained inside the residence – much less somebody violent or injured," *Garcia*, 2018 WL 4360990, at *2 (emphasis added), and that there were "*no facts* supporting a reasonable belief that there were individuals inside the house who threatened the officers' safety," *id*. at *3 (emphasis added). Given those determinations, this Court cannot find that the officers acted with an "objectively reasonable good-faith belief" that the warrantless entry was lawful. *See Davis*, 564 U.S. at 238.

Moreover, the Supreme Court cases establishing and applying the good faith exception involved officers' reliance on facially valid authority for the search, such as then-binding precedent, *see Davis*, 564 U.S. at 232, a statute that subsequently was invalidated, *see Krull*, 480 U.S. 342, or a facially valid search warrant, *see Leon*, 468 U.S. at 900. It is not at all clear that those holdings could be stretched to encompass the present case, which is completely distinguishable on its facts, even if this Court could conclude that the officers acted in an objectively reasonable manner.

Accordingly, the Court concludes that the good faith exception to the exclusionary rule does not apply.

### C. Attenuation Doctrine

Under the attenuation doctrine, "[e]vidence is admissible when the connection between unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance, so that the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained." *Strieff*, 136 S. Ct. at 2061 (internal quotation marks and citation omitted). Application of the attenuation doctrine is guided by the three factors articulated in *Brown v. Illinois*, 422 U.S. 590 (1975). *Strieff*, 136 S. Ct. at 2062. The Supreme Court recently summarized the *Brown* factors in *Utah v. Strieff*, as follows: (1) "the 'temporal proximity' between the unconstitutional conduct and the discovery of evidence"; (2) "'the presence of intervening circumstances'"; and (3) "'the purpose and flagrancy of the official misconduct.'" *Strieff*, 136 S. Ct. at 2062 (quoting *Brown*, 422 U.S. at 603-04).

In *Strieff*, an anonymous person called the police with a tip of "narcotics activity" at a particular residence. *Strieff*, 136 S. Ct. at 2059. Officer Fackrell conducted intermittent

surveillance of the residence for approximately one week. *Id*. He observed visitors arriving and leaving after only a few minutes at a frequency which suggested drug transactions. *Id*. Officer Fackrell observed one such visitor, Strieff, exit the residence and walk toward a nearby convenience store. *Id*. at 2060. Officer Fackrell detained Strieff in the store parking lot, asked what he was doing at the residence, and asked for his identification. *Id*. Upon checking the identification with the police dispatcher, Officer Fackrell discovered that Strieff had an outstanding arrest warrant for a traffic violation. *Id*. Officer Fackrell then arrested Strieff pursuant to the warrant, searched him incident to the arrest, and discovered a baggy of methamphetamine and drug paraphernalia. *Id*.

The state trial and appellate courts concluded that the evidence was admissible, but the state supreme court reversed. The United States Supreme Court "granted certiorari to resolve disagreement about how the attenuation doctrine applies where an unconstitutional detention leads to the discovery of a valid arrest warrant." *Strieff*, 136 S. Ct. at 2060. Assuming without deciding that Officer Fackrell lacked reasonable suspicion for the initial stop, the Supreme Court applied the three *Brown* factors to determine whether the evidence nonetheless was admissible under the attenuation doctrine. *Id*. at 2062.

With respect to the first factor, temporal proximity, the Supreme Court observed that it generally has "declined to find that this factor favors attenuation unless 'substantial time' elapses between an unlawful act and when the evidence is obtained." *Strieff*, 136 S. Ct. at 2062. The first factor clearly favored suppression because Officer Fackrell discovered the drug contraband only minutes after the illegal stop. *Id*.

With respect to the second factor, the presence of intervening circumstances, the Supreme Court noted that the arrest warrant was valid, predated the drug investigation, and was unconnected to the stop. *Strieff*, 136 S. Ct. at 2062. Characterizing a warrant as "a judicial mandate to an officer to conduct a search or make an arrest," the Supreme Court found that "arrest of Strieff thus was a ministerial act that was independently compelled by the pre-existing warrant." *Id*. at 2062-63. The Court reasoned that "once Officer Fackrell was authorized to arrest Strieff, it was undisputedly lawful to search Strieff as an incident of his arrest to protect Officer

11

Fackrell's safety." *Id*. at 2063. Under those circumstances, the Supreme Court found that the second factor "strongly" favored application of the attenuation doctrine to permit admission of the evidence. *Id*. at 2062.

With respect to the third factor, the purpose and flagrancy of the official misconduct, the Supreme Court found that Officer Fackrell had not observed when Strieff entered the suspected drug house, and therefore lacked a sufficient basis to conclude that Strieff was a short-term visitor who may have been engaged in a drug transaction. *Strieff*, 136 S. Ct. at 2063. Also, Officer Fackrell should have asked, rather than demanded, to speak with Strieff in the store parking lot. *Id*. However, the Supreme Court characterized Officer Fackrell's conduct as "at most negligent," holding that Officer Fackrell's "errors in judgment hardly rise to a purposeful or flagrant violation of Strieff's Fourth Amendment rights." *Id*. Important to the Court's reasoning was the absence of any indication that the unlawful stop was part of systemic or recurrent police misconduct. *Id*. Also important to the analysis was that after the unlawful stop, Officer Fackrell's conduct was lawful. *Id*. His decision to run a warrant check was a precaution for officer safety, and his actual search of Strieff was a lawful search incident to arrest. *Id*.

After weighing the three *Brown* factors, the Supreme Court held "that the evidence discovered on Strieff's person was admissible because the unlawful stop was sufficiently attenuated by the pre-existing arrest warrant." *Strieff*, 136 S. Ct. at 2063. While acknowledging that the first factor favored suppression, the Supreme Court concluded "that consideration is outweighed by two factors supporting the State." *Id*.

The present case is indistinguishable from *Strieff* in all meaningful respects. As to the first factor, temporal proximity, the officers in the present case discovered the drugs in Garcia's residence only minutes after the initial unlawful entry, just as Officer Fackrell discovered the drug contraband on Strieff only minutes after the initial unlawful stop. Consequently, for the reasons articulated in *Strieff*, the first factor favors suppression.

As to the second factor, the presence of intervening circumstances, the officers in the present case detained Garcia, called in his identification, and discovered his supervised release search condition, just as Officer Fackrell detained Strieff, called in his identification, and

discovered the outstanding arrest warrant. While the present case involves a supervised release search condition rather than the arrest warrant discussed in *Strieff*, this Court perceives no difference between the two for purposes of the attenuation doctrine. Pursuant to the search condition, the officers had unfettered discretion to search Garcia's "person, residence, office, vehicle, or any property under his control . . . at any time with or without cause." Judgment at p. 4, ¶ 7, ECF 164 in Case No. 10-cr-00301. Moreover, just as the arrest warrant was valid, predated the drug investigation, and was unconnected to the stop in *Strieff*, the search condition was valid, predated the events in question, and was unconnected to the initial warrantless entry of Garcia's residence. This Court therefore concludes that, for the same reasons that the arrest warrant discovered after the unlawful stop was an intervening circumstance in *Strieff*, the search condition discovered after the initial unlawful entry was an intervening circumstance in the present case.

As to the third factor, the purpose and flagrancy of the official misconduct, the officers in the present case made errors in judgment of the same type as those made by Officer Fackrell in *Strieff*. In the present case, Officers Lopez and Rosales were patrolling Garcia's neighborhood because it was known for gang-related activity, including drug trafficking. In *Strieff*, Officer Fackrell was watching a residence for drug trafficking. Officer Fackrell erred in stopping Strieff because he "lacked a sufficient basis to conclude that Strieff was a short-term visitor who may have been consummating a drug transaction." *Strieff*, 136 S. Ct. at 2063. Similarly, in the present case the Ninth Circuit held that the officers "lacked an objectively reasonable basis to believe that there was someone inside of the residence in need of immediate assistance," and lacked "reasonable suspicion that *any* person remained in the unit." *Garcia*, 2018 WL 4360990, at *2-3. While acknowledging Officer Fackrell's mistake, however, the Supreme Court found that the error did not "rise to a purposeful or flagrant violation of Strieff's Fourth Amendment rights." *Strieff*, 136 S. Ct. at 2063. This Court likewise finds that while Officer Lopez and the sergeants erred in entering Garcia's residence without a warrant, that error did not rise to a purposeful or flagrant violation of Garcia's Fourth Amendment rights.

Garcia does not attempt to distinguish *Strieff* in his brief, and in fact his brief does not address *Strieff* at all. The brief instead cites to decisions from the Seventh Circuit and the District

of New Mexico for the propositions that the third *Brown* factor is the most important to the attenuation analysis and that the Court must consider the officers' conduct both before and after the constitutional violation. *See United States v. Conrad*, 673 F.3d 728, 735 (7th Cir. 2012) ("[The third] factor considers both the conduct before and after the constitutional violation."); *United States v. Ramos*, 194 F. Supp. 3d 1134, 1163 (D.N.M. 2016) (third factor is particularly significant). Garcia argues that the events leading up to the warrantless entry demonstrated flagrant misconduct on the part of the officers. He asserts that Officer Rosales saw two men talking and told them to sit on the curb based on nothing more than speculation that they were engaged in criminal activity. He also asserts that Officer Rosales chased Nevarez for no good reason. According to Garcia, because the officers were abusing their authority at the start of the chain of events, it is more likely that the officers' later violation of Garcia's constitutional rights was purposeful and flagrant.

Garcia cites no evidence in support of his argument. Even if the Court were to accept Garcia's characterization of Officer Rosales's conduct, Officer Lopez testified that he did not learn the details of Officer Rosales's interaction with Nevarez and the other individual until after the warrantless entry. Hrg. Tr. 21:20-23:18, ECF 426 in Case No. 10-cr-00301, ECF 77 in Case No. 15-cr-00288. Officer Lopez testified that Officer Rosales later said that he (Rosales) had seen two individuals and ordered them to sit on the curb, and that one ran away. *Id*. 21:25-22:4. Officer Lopez also read Officer Rosales's police report. *Id*. at 22:14-20. However, there is no indication on this record that Officer Lopez and the two sergeants who conducted the warrantless entry were involved in or had knowledge of Officer Rosales's alleged abuse of authority in directing Nevarez and the other individual to sit on the curb. It is clear, even from Garcia's recitation of events, that the police were not targeting Garcia and in fact did not know of his existence when they entered his residence. The facts of this case therefore favor attenuation at least as strongly as did the facts in *Strieff*, where Officer Fackrell specifically targeted Strieff for the unlawful stop based on his association with the suspected drug house.

In the Court's view, *Strieff* is on all fours with the present case. As did the Supreme Court in *Strieff*, this Court finds that the first *Brown* factor favors suppression of the evidence, but that

14

the second and third *Brown* factors strongly favor admission of the evidence under the attenuation doctrine. Accordingly, the Court concludes that the exclusionary rule does not apply and that the evidence seized from Garcia's residence is admissible in Case No. 15-cr-00288.

## IV. ORDER

Having concluded that the exclusionary rule does not apply in either Case No. 10-cr-00301 or Case No. 15-cr-00288, the Court once again DENIES Garcia's motion to suppress evidence in both cases.

Dated: February 21, 2019

BETH LABSON FREEMAN
United States District Judge